1

2

3

4

5

6                      **IN THE UNITED STATES DISTRICT COURT**

7                           **FOR THE DISTRICT OF ARIZONA**

8

9    Paige Kinney,                          No. CV-13-00510-PHX-NVW (BSB)
                                                 CR-10-00796-PHX-NVW
10                    Defendant/Movant,
                                            No. CV-13-00511-PHX-NVW (BSB)
11   v.                                          CR-11-00491-PHX-NVW

12   United States of America,              **REPORT AND**
                                            **RECOMMENDATION**
13                    Plaintiff/Respondent.

14

15        Defendant/Movant Paige Kinney (Defendant) has filed a Motion to Vacate, Set

16   Aside, or Correct Sentence by a person in Federal Custody pursuant to 28 U.S.C. § 2255

17   challenging her convictions and sentences pursuant to plea agreements in two cases: CR-

18   10-796-PHX-NVW (the 2010 case), and CR-11-491-PHX-NVW (the 2011 case).  (CV-

19   13-510 Doc. 1; CV-13-511 Doc. 1.)[1]  Defendant filed the same supporting memorandum

20   for both motions.    (CV-13-510 Doc. 10; CV-13-511 Doc. 9.)    In response, the

21   government asserts that the motions should be denied because Defendant knowingly and

22   _____

23        [1]  References to the docket in the two pending § 2255 proceedings are indicated by
     "CR 13-510" for case number CV-13-510-PHX-NVW (BSB) and "CV-13-511" for case
24   number CV-13-511-PHX-NVW (BSB).  The underlying criminal cases at issue in both of
     Defendant's § 2255 proceedings were consolidated for the change of plea hearing and
25   sentencing.  Defendant raises some of the same claims in both § 2255 motions and she
     filed the same amended memorandum in support of both motions. (CV-13-510 Doc. 10;
26   CV-13-511 Doc. 9.)  The government filed the same "consolidated response" to both §
     2255 motions.  (CV-13-510 Doc. 16; CV-13-511 Doc. 15.)  Defendant filed the same
27   reply in both cases.   (CV-13-510 Doc. 17; CV-13-511 Doc. 16.) This Report and
     Recommendation addresses both cases.
28

1   voluntarily waived her rights to collateral review.  (CV-13-510 Doc. 16; CV-13-511 Doc.

2   15.)  For the reasons set forth below, the Court recommends that Defendant's § 2255

3   motions be denied.

4   **I.**    **Background**

5       **A.**    **2010 and 2011 Indictments**

6       On June 15, 2010 a grand jury indicted Defendant in CR 10-796-PHX-NVW on

7   fifteen counts of wire fraud in violation of 18 U.S.C. § 1343, one count of conspiracy to

8   commit wire fraud in violation of 18 U.S.C. § 1349, and thirteen counts of money

9   laundering in violation of 18 U.S.C. §1957.  The charges stemmed from Defendant's role

10   in a mortgage loan origination fraud involving sixty properties.

11       While on release pending trial in the 2010 case, Defendant was charged in CR 11-

12   491-PHX-NVW with additional fraud-related offenses, most of which were committed

13   while she was on release status.  Subsequently, on March 16, 2011, Defendant was

14   charged in a superseding indictment with ten counts of bankruptcy fraud in violation of

15   18 U.S.C. § 157, four counts of false declarations in a bankruptcy proceeding in violation

16   of 18 U.S.C. § 152(3), thirty-three counts of mail fraud in violation 18 U.S.C. § 1341, and

17   one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349.  The

18   charges stemmed from Defendant's actions in changing her name and making other false

19   assertions to hide assets in her bankruptcy proceeding.

20       **B.**    **Plea Agreements**

21       In the 2010 case, Defendant pleaded guilty to conspiracy to commit wire fraud

22   (Count 16) and conspiracy to commit money laundering (Count 30) pursuant to a written

23   plea agreement.  In the factual basis of the plea agreement, Defendant acknowledged that:

24   (1) she conspired with co-conspirators Brett Matheson, Susan Rayman, and others to use

25   unqualified straw buyers to purchase properties on behalf of a company called Home

26   Solutions; (2) she knew or could foresee that loan applications were being submitted to

27   lenders with false information, including inflated income, bank accounts with assets that

28   did not belong to the borrower, and false employment status; (3) she knew that false lease

agreements were prepared to minimize a borrower's liabilities; (4) she knew that "cash back" was disbursed to Home Solutions for the purpose of remodeling the homes and that no houses were remodeled; (5) she drafted letters, many of which contained false statements, for several referral buyers to explain the claims on the loan applications and related documents; and (6) she added several referral buyers as signers on her own bank account to create the appearance that the referral buyers had more cash in savings than they actually did.  (CV-13-510 Doc. 2, Ex. C at 7-15.)[2]  The plea agreement stipulated that Defendant's sentence would not exceed ten years and could run consecutive to the sentence in the 2011 case.  (*Id*. at 3.)

In the 2011 case, Defendant pleaded guilty to two counts of bankruptcy fraud (counts 1 and 8), two counts of false declarations in a bankruptcy proceeding (counts 1 and 12), six counts of mail fraud (counts 24, 31 and 47-50), and one count of conspiracy to commit bank fraud (count 46).  In the factual basis of the written plea agreement, Defendant acknowledged that: (1) she committed bankruptcy fraud by making materially false statements about her true name, her assets and liabilities, the status of her home, and her rental income in both her petition and at the hearing to convince the bankruptcy court to approve her reorganization plan; (2) she made materially false statements in a bankruptcy proceeding regarding her name and her social security number; (3) she committed mail fraud while working at a mortgage company known as PRMI by submitting invoices to the main PRMI office that falsely represented that she was obtaining mortgage leads from a company named RIW, and received approximately $175,000 from PRMI as a result of submitting the false invoices; (4) she committed conspiracy to commit bank fraud by knowingly submitting a loan application to Credit

---

[2]  Although Defendant filed the same amended memorandum in support of both of her § 2255 motions (CV-13-510 Doc. 10; CV-13-511 Doc. 9), she did not refile the exhibits that were attached to the original memorandum that she filed in CV-13-510. Accordingly, the Court cites the exhibits that were filed at CV-13-510 Doc. 2.  The plea agreements for both of the underlying criminal cases are also available in those case dockets.  (CR-10-796-PHX-NVW Doc. 112; CR-11-491-PHX-NVW Doc. 60.)

1  Union West that contained material misrepresentations about the residence, income, and

2  employment of her friend Pamela Willoughby, along with an Arizona Driver License

3  falsely representing Willoughby's address; and (5) she committed mail fraud by devising

4  a scheme to fraudulently obtain reimbursement from Allstate Insurance Company by

5  falsely representing that her house was burglarized and that numerous personal items

6  were stolen.  (CV-13-510 Doc. 2, Ex. D at 10-13.)  The plea agreement provided that

7  Defendant's sentence would not exceed five years and could run consecutive to the

8  sentence in the 2010 case.  (*Id*. at 4.)

9       The written plea agreements in both cases also included a waiver of Defendant's

10  right to seek direct appeal or collateral review of her convictions and sentences.

11  Specifically, both plea agreements contained the following provision:

> The defendant waives any and all motions, defenses, probable
> cause determinations, and objections which the defendant
> could assert to the Indictment, or to the Court's entry of
> judgment against the defendant, and imposition of sentence
> upon the defendant, provided the sentence is consistent with
> this agreement.  The defendant further waives: (1) any right to
> appeal the Court's entry of judgment against defendant; (2)
> any right to appeal the imposition of sentence upon defendant
> under Title 18, United States Code Section 3742 (sentence
> appeals); and (3) **any right to collaterally attack
> defendant's conviction and sentence under Title 28,
> United States Code, Section 2255, or any other collateral
> attack.**  The defendant acknowledges that **this waiver shall
> result in the dismissal of any appeal or collateral attack**
> the defendant might file challenging his conviction or
> sentence in this case.

21  (CV-13-510 Doc. 2, Ex. C at 5; Ex. D at 5-6 (emphasis added).)

22       Defense counsel Tracy Westerhausen attests that she reviewed the plea agreements

23  with Defendant and explained the consequences of the waiver provisions in both plea

24  agreements prior to the change of plea proceeding.  (CV-13-510 Doc. 16, Ex. 1; CV-13-

25  511 Doc. 15, Ex. 1.)  Additionally, in 2012, Defendant signed a document acknowledging

26  that she had discussed with counsel that, pursuant to her plea agreements in the 2010 and

27  2011 cases, she was giving up her right to collaterally attack her convictions and

28

- 4 -

1    sentences pursuant to 28 U.S.C. § 2255, or any to bring any other collateral attack.  (CV-
2    13-510 Doc. 16, Ex. 2; CV-13-511 Doc. 15, Ex. 2.)

3        **C.    Change of Plea Hearing**

4        During the change-of-plea proceeding before Magistrate Judge David K. Duncan,
5    Defendant stated that said she understood the charges against her in the 2010 and the
6    2011 cases.  (CV-13-510 Doc. 2, Ex. E at 10-11.)  Defendant further stated that she had
7    read both plea agreements and that she had sufficient time to talk discuss the plea
8    agreements with counsel.  (*Id*. at 8.)  Defendant stated that she understood everything that
9    was in the plea agreements and affirmed that she has not been forced or threatened to
10   plead guilty.  (*Id*. at 8, 16.)   She confirmed that she was satisfied with counsel's
11   representation.  (*Id*. at 8-9.)

12       Judge Duncan explained the charges against Defendant in both cases in detail.  (*Id*.
13   at 9-11, 24-28.)  He also informed Defendant of the statutory maximum penalties for the
14   offenses to which she was pleading guilty and provided a detailed discussion of the
15   sentencing procedures in federal court.  (*Id*. at 11-14, 16-18.)  Defendant stated that she
16   understood the charges against her, the maximum penalties, and the sentencing
17   procedures.  (*Id*. at 10, 11, 14, 18, 23.)

18       Judge Duncan also explained to Defendant the rights she would be giving up by
19   pleading guilty.  (*Id*. at 28-29.)  Defendant said she understood those rights and wished to
20   give them up and plead guilty.  (*Id*. at 29.)  In addition, Defendant agreed to waive her
21   rights to appeal and collaterally attack the convictions and sentences in both cases.  (*Id*. at
22   29-31.)  Judge Duncan specifically reviewed the waiver provision contained in the plea
23   agreements:

24           THE COURT: After a trial, a person usually has the right to
25           appeal any conviction, sentence, or decision of the trial court
             that the person thinks is wrong . . . . And if you couldn't
26           afford the cost of the appeal or to pay for a lawyer, both of
             those would be provided for you at no expense.  But if you
27           decide to plead guilty under the terms of your plea
             agreements, you would be giving up all of those appeal rights.
28           This is because both plea agreements include a very broad
             waiver.

- 5 -

* * *

[T]his waiver reads in part: The defendant waives any and all motions, defenses, probable cause determinations, and objections which the defendant could assert to the indictment or to the court's entry of judgment against the defendant and imposition of sentence upon the defendant provided the sentence is consistent with this agreement.

The defendant further waives any right to appeal the Court's entry of judgment against the defendant and any right to appeal the imposition of sentence upon the defendant under Title 18 of the United States Code, Section 3742 and any right to collaterally attack defendant's conviction and sentence under Title 28 of the United States Code, Section 2255, or any other collateral attack.

The consequence of this waiver is that if you decide to plead guilty, and Judge Wake accepts these plea agreements, and the sentences he imposes are permitted by the terms of the plea agreement and then you sometime later **seek to appeal or collaterally attac**k your conviction or sentences, the Government's response will be **that any such appeal or collateral attack should be dismissed** because today, on the 26th of May, 2011, in this courtroom, you knowingly and voluntarily gave up all of your appeal rights.   Do you understand?

THE DEFENDANT: Yes, sir.

(CV-13-510 Doc. 2, Ex. E at 29-31 (emphasis added).)

Defendant subsequently admitted to the factual basis in both plea agreements.  (*Id.* at 31-42.)  At the conclusion of the hearing, Judge Duncan found that there was a factual basis for Defendant's guilty pleas, and that her guilty pleas were "knowingly, voluntarily, and intelligently" entered.  (*Id.* at 45.)

### D.   Consolidated Sentencing Proceeding

On March 7, 2012, District Judge Neil V. Wake accepted Defendant's guilty pleas and conducted a lengthy and thorough sentencing hearing.   During the sentencing proceeding, the Court described Defendant's actions as "a breathtaking range and depth of financial fraud."  (CV-13-510 Doc. 2, Ex. H at 52.)[3]  In response, Defendant stated that:

---

[3]   The transcript of the March 7, 2012 sentencing is also located at CR-10-796-PHX-NVW Doc. 133.

1
2
3

> The DEFENDANT: Your Honor, you are absolutely right. You have harshly and accurately described my behavior for the last little bit. It has taken probably the last 12 months of being behind bars, or being incarcerated, to really grasp, I think, the full concept of what I had done bringing me here.

4

(*Id*. at 65.)

5
6
7
8
9
10

After the Court accepted Defendant's guilty pleas in both cases, it sentenced her to ten years' imprisonment in the 2010 case and five years' imprisonment in the 2011 case, to run consecutively, for a total of fifteen years' imprisonment.[4]  (*Id*. at 75-80.)  At the conclusion of the sentencing hearing, the Court found, and the parties agreed, that the sentences complied with the plea agreements and resulted in Defendant's waiver of her review rights.  (*Id*. at 84-86.)

11

## II.  Defendant's Claims in the Pending Motions

12
13
14
15
16
17
18
19
20

In the pending § 2255 motions, Defendant asserts seven grounds for relief.  As an initial matter, she apparently anticipated that the government would argue that she waived her rights to collaterally attack her convictions and sentences and, therefore, she argues that the waivers are invalid in both the 2010 and 2011 cases because (1) her counsel was ineffective for failing to advise her that by signing the plea agreement she was waiving her right to collaterally attack her convictions and sentences, and (2) the Court's discussion of the waiver provision was ambiguous and did not comply with Federal Rule of Civil Procedure 11.[5]  (CV-13-510 Doc. 1 at 3-4 (grounds one and two); CV-13-511 Doc. 1 at 3-4 (grounds one and two).)

21
22
23
24

Defendant next asserts several claims challenging the effectiveness of her counsel. She argues that in the 2010 case her counsel was ineffective (1) for failing to investigate and interview witnesses, (2) for failing to correct the trial court's erroneous computation of her sentence under the Sentencing Guidelines, and (3) for failing to object to the

25
26

---

[4]  The Presentence Report recommended that the Court reject the plea agreement in the 2010 case and impose a longer sentence.  (CV-13-510 Doc. 16 at 6.)

27
28

[5]  As Defendant apparently expected, the government argues that the § 2255 motions should be denied because Defendant waived her right to collaterally attack her convictions and sentences when she pleaded guilty and entered into the plea agreements in the 2010 and 2011 cases.  (CV-13-510 Doc. 16; CV-13-511 Doc. 15.)

amount of restitution.  (CV-13-510 Doc. 1 at 5-12(grounds three, four, and five).)  She argues that in the 2011 case her counsel was ineffective for failing to request an evidentiary hearing to determine the value of the real property sought to be discharged in the bankruptcy proceedings and to establish the amount of intended loss.  (CV-13-511 Doc. 1 at 5 (ground three).)  Finally, in both the 2010 and the 2011 cases she argues that counsel's errors cumulatively resulted in a violation of the Sixth Amendment.  (CV-13-510 Doc. 1 at 12 (ground six); CV-13-511 Doc. 1 at 6 (ground four).)   As discussed below, the § 2255 motions should be denied.

### A.     Waiver of Right to Bring a Collateral Attack

Because the government has asserted that Defendant waived her rights to collaterally attack her convictions and sentences, the Court first reviews whether a waiver applies.  It is well settled that plea agreements are contractual in nature and their plain language will generally be enforced if the agreement is clear and unambiguous on its face.  *See United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc).

The right to collaterally challenge a conviction or sentence is statutory, and a knowing and voluntary waiver of a statutory right is enforceable.  *United States v. Abarca*, 985 F.2d 1012, 1013-14 (9th Cir. 1993).   To be enforceable as a bar to a collateral attack, a plea agreement must expressly waive the right to bring a § 2255 motion.[6]  *United States v. Nunez*, 223 F.3d 956, 958–59 (9th Cir. 2000); *Abarca*, 985

---

[6]  The Court may resolve the issue of whether a waiver is knowing and voluntary based on a review of the written plea agreement and the record of the change of plea proceeding, without holding a hearing.  *See Jeronimo*, 398 F.3d 1149, 1153-55 (9th Cir. 2005) (finding waiver of direct appeal knowing and voluntary based on plea agreement and change of plea proceeding). Similarly, a claim that defense counsel was constitutionally ineffective in relation to the waiver is subject to dismissal without a hearing.  *See United States v. Schneflander*, 743 F.2d 714, 717 (9th Cir. 1984).  *See also Pruitt*, 32 F.3d at 433 (summarily dismissing ineffective assistance of counsel claim on direct appeal).  Accordingly, a hearing is not necessary to resolve these § 2255 motions.

F.2d at 1013–14 (stating that movant's waiver executed in his plea agreement foreclosed him from challenging his sentence in a § 2255 motion); *United States v. Pruitt*, 32 F.3d 431, 432–33 (9th Cir. 1994) (finding that language in a plea agreement that the defendant "will not appeal whatever sentence is imposed by the court" did not constitute a waiver of the right to bring a § 2255 motion).

The only claims that a defendant cannot waive are claims that the plea or waiver itself was involuntary, and that ineffective assistance of counsel rendered the plea or waiver involuntary. *See Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005) (holding that a plea agreement that waives the right to file a federal habeas petition pursuant to § 2254 is unenforceable with respect to an ineffective-assistance-of-counsel claim that challenges the voluntariness of the waiver).

However, "[c]ollateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside [the category of ineffective assistance of counsel claims challenging the validity of the plea or the waiver] are waivable." *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001); *see also Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) (joining the Second, Fifth, Sixth, Seventh, and Tenth Circuits, the Eleventh Circuit held that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing.").

In addition, a defendant's right to challenge any sentencing errors may be explicitly waived. *See United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991) (declining to consider defendant's claim that the district court had misapplied the sentencing guidelines because defendant had waived his right to appeal in his plea agreement and he was sentenced in accordance with the terms of that agreement). When a waiver specifically includes the waiver of the right to appeal a sentence, then it also waives "the right to argue ineffective assistance of counsel at sentencing." *United States v. Nunez*, 223 F.3d 956, 959 (9th Cir. 2000); *see United States v. Fernandez-Mendoza*,

1   2013 WL 4431029, at *7-8 (D. Ariz. Aug. 16, 2013) (finding that movant's knowing and

2   intelligent waiver of his right to seek review in a § 2255 motion precluded him from

3   challenging his sentence in a § 2255 motion).

4         **B.      Ineffective Assistance of Counsel — Ground One in Both Cases**

5         Defendant first argues in both cases that any provisions in her plea agreements

6   waiving her rights to collaterally attack her convictions or sentences are invalid because

7   her counsel was ineffective and did not advise her that, by signing the plea agreements,

8   she was waiving these rights.   (CV-13-510 Doc. 1 at 3; CV-13-511 Doc. 1 at 3.)

9   Defendant's claim that ineffective assistance of counsel rendered the plea or waiver

10  involuntary is not subject to waiver.   *See Washington,* 422 F.3d at 871.   Therefore, the

11  Court addresses the merits of Defendant's claim that her counsel was ineffective by

12  failing to advise her of the consequences of waiving her rights to collaterally attack her

13  sentences and convictions in the 2010 and 2011 cases.

14        To obtain relief for a claim of ineffective assistance of counsel, a defendant must

15  show both that counsel's representation fell below an objective standard of

16  reasonableness, and that counsel's deficient performance prejudiced the defense.

17  *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984).   To be deficient, counsel's

18  performance must fall "outside the wide range of professionally competent assistance."

19  *Strickland*, 466 U.S. at 690.   In reviewing counsel's performance, courts "indulge in a

20  strong presumption that counsel's conduct falls within the wide range of reasonable

21  professional assistance."   *Id.*   "A fair assessment of attorney performance requires that

22  every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

23  circumstances of counsel's challenged conduct, and to evaluate the conduct from

24  counsel's perspective at the time."   *Strickland*, 466 U.S. at 689.   The standard for judging

25  counsel's representation is a most deferential one.   It is "all too tempting" to "second

26  guess counsel's assistance after conviction or adverse sentence."   *Strickland*, 466 U.S. at

27  689.   "The question is whether an attorney's representation amounted to incompetence

28  under prevailing professional norms, not whether it deviated from best practices or most

common custom.  *Harrington v. Richter*, ___ U.S.___, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 690).

Defendant has not shown that counsel's performance was deficient.  Defense counsel attests that she met with Defendant before she accepted the plea agreements in the 2010 and 2011 cases.  (CV-13-510 Doc. 16, Ex. 1; CV-13-511 Doc. 15, Ex. 1.) Counsel attests that she reviewed with Defendant the rights she was giving up by entering the plea agreements in both cases, including her right to collaterally attack her convictions and sentences under 28 U.S.C. § 2255.  (*Id*.)  She advised Defendant that, by waiving her right to collaterally attack her convictions and sentences, any collateral attack that she filed in either the 2010 or the 2011 case would be dismissed.  (*Id*.)

On March 9, 2012, Defendant signed a statement stating that she had met with counsel regarding the plea agreements in both cases.  (CV-13-510 Doc. 16, Ex. 2; CV-13-511 Doc. 15, Ex. 2.)  Defendant stated that she and counsel had discussed that, pursuant to her guilty pleas, Defendant was giving up her right to appeal the Court's judgment, her right to appeal the imposition of sentence, and "any right to collaterally attack (a petition for writ of habeas corpus) [her] conviction and sentence under 28 U.S.C. § 2255, or any other collateral attack."  (*Id*.)  Defendant does not dispute that she signed this statement.

Contrary to Defendant's assertion, the record in both cases ─ including Defendant's own written statement made in 2012 ─ reflects that counsel advised her that, by entering the plea agreements, she was waiving her right to collaterally attack her convictions and sentences.  *See United States v. Castello*, 724 F.2d 813, 815 (9th Cir. 1984) (stating that a district court may properly credit a defendant's testimony at a hearing regarding entry of a guilty plea over any subsequent declarations to the contrary.)

Defendant asserts that because the section of the plea agreements entitled "Defendant's Approval and Acceptance" did not specifically state that Defendant was waiving her right to bring a collateral attack, she was not aware that she was waiving that right pursuant to the plea agreements.  (CV-13-510 Doc. 1 at 3; CV-13-511 Doc. 1 at 3.) Although that section did not specifically list the waiver of Defendant's right to bring a

1    collateral attack among the other rights that Defendant was waiving, the waiver of that

2    right was clearly set forth in a separate section of the plea agreements entitled "Waiver of

3    Defenses and Appeal Rights."   (CV-13-510 Doc. 2, Ex. C at 5; Ex. D at 5-6.)

4    Furthermore, counsel attests that she discussed the waiver provisions in both plea

5    agreements with Defendant, and Defendant signed a statement affirming that counsel had

6    done so.  (CV-13-510 Doc 16, Exs. 1, 2; CV-13-511 Doc. 15, Exs. 1,2.)

7        Because the record reflects that counsel discussed the waiver provisions included

8    in both plea agreements with Defendant, she has not shown that counsel's performance

9    was deficient with respect to the waiver provision, her ineffective assistance of counsel

10   claim fails, and the Court need not reach the prejudice prong of the *Strickland* test.  *See*

11   *Strickland*, 466 U.S. at 687 (stating that, absent deficient performance, there is no need to

12   evaluate prejudice).

13        **C.    Voluntariness of Guilty Plea — Ground Two in Both Cases**

14        In ground two in both § 2255 motions, Defendant argues as another basis to

15   invalidate the waiver provisions of her plea agreements that the Court's discussion of

16   these provisions during the change of plea hearing was "ambiguous" and did not comply

17   with Federal Rule of Civil Procedure 11, and that "the ambiguity should be resolved in

18   [her] favor."  (CV-13-510 Doc. 1 at 4; CV-13-511 Doc. 1 at 4.)  She essentially argues

19   that the waiver of her rights to collaterally attack her convictions and sentences in both

20   cases was not knowing or voluntary due to ambiguity in the Court's discussion of the

21   waiver provisions.  (*Id.*)  She asserts that the Court referred to appeal rights generally and

22   did not clarify that the plea agreements waived her right to collaterally attack her

23   convictions and sentences in a § 2255 motion.  (CV-13-510 Doc. 10 at 13-14; CV-13-511

24   Doc. 9 at 13-14.)

25        Defendant pleaded guilty pursuant to written plea agreements, which the Court

26   accepted in both the 2010 and 2011 cases.   In the both written plea agreements,

27   Defendant specifically acknowledged that: (1) she had read the entire plea agreement

28   with the assistance of counsel and understood its provisions; (2) she understood the

1    constitutional rights that she was forfeiting by pleading guilty; (3) she had discussed the

2    charges and possible sentences with counsel and understood them; (4) the plea was

3    voluntary and the written plea agreement contained all of the terms and conditions of her

4    guilty plea, and (5) she was satisfied that defense counsel had represented her in a

5    competent manner.  (CV-13-510 Doc. 2, Ex. C at 15-16; Ex. D at 13-14.)   The plea

6    agreements clearly stated that Defendant was waiving her right to collaterally attack her

7    convictions and sentences in a section entitled "Waiver of Defenses and Appeal Rights."

8    (CV-13-510 Doc. 2, Ex. C at 5; Ex. D at 5-6.)

9        During the consolidated change of plea hearing, as Rule 11 requires, the Court

10   inquired as to the voluntariness of the plea agreements and Defendant's understanding of

11   their terms.  (CV-13-510-Doc. 2, Ex. E.)   Defendant stated that (1) she understood the

12   nature of the charges against her to which the pleas were offered and the maximum

13   penalties she faced, (2) she was entering the pleas knowingly and voluntarily and without

14   force, threats, or promises apart from what was contained in the written plea agreement,

15   and (3) she had read the plea agreements, discussed them with counsel, and understood

16   the terms of the plea agreements, including the provisions waiving her right to appeal and

17   to collaterally attack her conviction and sentence.  (*Id.*)

18       The Court directed Defendant's attention to the waiver provision in each plea

19   agreement and clarified that the waiver provision appeared on page five of the plea

20   agreement in the 2010 case, and appeared on page five and continued to page six in the

21   plea agreement in the 2011 case.  (*Id.* at 30.)  The Court read that provision in its entirety,

22   including the statement that Defendant was waving any right to collaterally attack her

23   convictions and sentences pursuant to 28 U.S.C. § 2255.  The Court then explained that

24   the waiver provision meant that if Defendant later sought to collaterally attack her

25   convictions or sentences, the government would respond that such motion should be

26   dismissed because Defendant had knowingly and voluntarily waived all of her appeal

27   rights.  (*Id.* at 30-31.)  Defendant acknowledged that she understood that by pleading

28

guilty, she was giving up her right to collaterally attack her convictions and sentences in both the 2010 and 2011 cases.  (CV-13-510 Doc. 2, Ex. E at 31.)

Here, the Court's discussion of the waiver provision contained in both plea agreements complied with Rule 11(b)(1)(N).  After reading the waiver provision in the plea agreements, the Court explained that, pursuant to the waiver provision, if Defendant later sought to appeal or collaterally attack her convictions or sentences, the government would argue that such an appeal or collateral attack should be dismissed because Defendant had given up her "appeal rights."[7]  (*Id.*)  Defendant responded "Yes, sir," when asked if she understood.  (*Id.*)  Defendant's statement during the plea colloquy indicates that she was aware of the effect of the waiver provision in the plea agreements.  (CV-13-510 Doc. 2, Ex. E at 29-31.)  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991) (a defendant's contemporaneous statements regarding his understanding of the plea agreement carry substantial weight in determining the voluntariness of a guilty plea); *United States v. Walker*, 160 F.3d 1078, 1096 (6th Cir. 1998) (holding that "a straightforward and simple 'Yes, your Honor' is sufficient to bind a Movant to [the] consequences [of a plea agreement].").  A district court may properly credit a defendant's testimony at a hearing regarding entry of a guilty plea over any subsequent declarations to the contrary.  *See United States v. Castello*, 724 F.2d 813, 815 (9th Cir. 1984).

Defendant argues that the Court's use of the term "appeal rights" was ambiguous and did not make it clear that she was waiving her right to collaterally attack her sentences and convictions.  The transcript of the plea colloquy, however, establishes that

---

[7]  Defendant's reliance on *United States v. Pena*, 314 F.3d 1152, 1158 (9th Cir. 2003) in support of her claim is misplaced.  (CV-13-510 Doc. 10 at 13; CV-13-511 Doc. 9 at 13.)  In that case, the court found that the plea colloquy did not comply with Rule 11 because, although the court read the plea agreement, it did not specifically identify the charges against defendant to which he was pleading guilty.  Here, the Court specifically identified the charges to which Defendant was pleading guilty in each case.  (CV-13-510 Doc. 2, Ex. E at 10-11.)  Additionally, the Court did not simply read the wavier provision in the plea agreements, but also explained that provision.

1    the Court specifically discussed the waiver provision and explained that, by entering her

2    guilty pleas, Defendant was waiving her right to appeal and to collaterally attack her

3    sentences.  At the end of the explanation of the waiver provision, the Court referred to the

4    right to appeal and the right to bring a collateral attack as "appeal rights."  In the context

5    of the plea colloquy, the use of the term "appeal rights" to refer generally to the right to

6    appeal and the right to collateral review did not render the plea colloquy ambiguous.

7        The record reflects that Defendant's guilty pleas were knowingly and voluntarily

8    made.  There is no support for Defendant's claim that the Court did not conduct a plea

9    colloquy in the 2011 case, or for her claim that the Court's discussion of the waiver

10   provision was inadequate, ambiguous, or otherwise failed to comply with Rule 11.[8]

11   Accordingly, Defendant is not entitled to relief on her claims asserted in ground two in

12   both cases.

13       **D.    Ineffective Assistance of Counsel — Ground Three in the 2010 Case**

14       In ground three in the 2010 case, Defendant argues that counsel was ineffective for

15   failing to investigate and interview witnesses.  (CV-13-510 Doc. 1 at 5 and Doc. 10 at

16   14.)  She asserts that there is a reasonable probability that she would not have accepted

17   the plea agreement if she had known that counsel's advice was "tainted" by a failure to

18   investigate the facts that would have shown that she had a minor role in the conspiracy.

19   (CV-13-510 Doc. 1 at 19.)    Because this claim pertains to the voluntariness of

20   Defendant's plea, it is not waived pursuant to the waiver provision of her plea agreement.

21   *See Washington*, 422 F.3d at 871.  Therefore, the Court will address the merits of

22   Defendant's claim.

23       To prevail on an ineffective assistance claim, a convicted defendant must show

24   that counsel's representation fell below an objective standard of reasonableness, and that

25   _____

26       [8]   In her Reply, Defendant argues for the first time that the plea colloquy was
     inadequate because the Court did not advise her that she could not withdraw her plea if
     the Court did not accept the government's recommendations.  (CV-13-510 Doc. 17 at 6.)

27   Contrary to Defendant's assertion, the Court specifically advised her that she would "not
     be able to change [her] mind and withdraw from the plea agreements or withdraw [her]

28   guilty pleas if [she] received a sentence that [was] higher than [she was] hoping for or
     expected."  (Doc. 2, Ex. E at 21-22.)

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88. The *Strickland* test also applies to challenges to guilty pleas based on ineffective assistance of counsel. *Lafler v. Cooper*, ___ U.S.___. 132 S. Ct. 1376, 1384 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). A defendant who pleads guilty based on the advice of counsel may attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel fell below the level of competence demanded of attorneys in criminal cases. *Id*. at 56. To satisfy the second prong of the *Strickland* test, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Defendant contends that counsel was ineffective for failing to investigate the case and interview witnesses. She argues that she gave counsel her written notes in response to the allegations in the indictment, the names of witnesses who could corroborate "all or portions of the statements" in those notes, and bank records showing that Defendant never received any of the money paid in "cash back" loans. (CV-13-510 Doc. 1 at 6 and Doc. 10 at 15-17.) Defendant asserts that the witnesses and other evidence would have shown that she had only a minor role in the mortgage fraud conspiracy. (CV-13-510 Doc. 10 at 18.) Defendant asserts that counsel did not contact the witnesses that she identified or investigate the other evidence that she had provided. Defendant argues that, if she had known that counsel's advice regarding the guilty plea was "tainted" by counsel's failure to investigate, there is a reasonable probability that she would have not have accepted the guilty plea. (*Id.* at 18-19.)

The Supreme Court has noted that in guilty plea cases, when the error of counsel is the failure to investigate, the prejudice inquiry depends on the "likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59. Even assuming

that counsel's performance was deficient for failing to investigate, Defendant's claim fails because she cannot establish prejudice.

Defendant has not specified how further investigation would have provided counsel with additional information or evidence that counsel did not already know about when advising Defendant to plead guilty. Counsel was aware of the allegations in the indictment. According to Defendant's motion, she informed counsel about her theory of defense and that she had a limited role in the mortgage fraud conspiracy. (CV-13-510 Doc. 10 at 16.) Defendant provided counsel with her notes in response to the charges in the indictment, the names of witnesses who could corroborate her statements, and bank records. (CV-13-510 Doc. 2, Ex. F.) Although counsel may not have interviewed the witnesses that Defendant identified, counsel was aware of the nature of the statements those witnesses might have given based on Defendant's notes. (CV-13-510 Doc. 10 at 15-18.) In short, counsel was aware of the evidence and information that Defendant contends counsel would have uncovered by further investigating the case.

Despite Defendant's own knowledge of the witnesses and evidence that supported her contentions regarding her limited role in the mortgage fraud conspiracy, Defendant signed the plea agreement and admitted to the factual basis of her guilty plea in writing and during the change of plea hearing. Defendant was aware of the existence of such evidence at the time she entered her guilty plea and she had provided that information to counsel. Defendant has not shown that there is a reasonable probability that she would have rejected the guilty plea and proceeded to trial but for counsel's alleged failure to further investigate the case. *See Moore v. Adduci*, 2013 WL 2417947, at *13 (C.D. Cal. May 31, 2013) (finding that petitioner's guilty plea was knowing and voluntary when he was aware of exculpatory evidence at the time he entered his plea); *Brown-Monroe v McDonald*, 2012 F. Supp. 2d 6140408, at *11 (C.D. Cal. Sept. 10, 2012) (petitioner failed to show a reasonable probability that discovery of evidence would have led counsel to change advice to plead guilty when counsel was aware of the facts at the time of

1    petitioner's guilty plea.)   Therefore, Defendant's claim of ineffective assistance of

2    counsel claim fails.

3        **E.    Ineffective Assistance of Counsel — Grounds Four and Five in the**
              **2010 Case**

4

5        In ground four of the 2010 case, Defendant argues that counsel was ineffective for

6    failing to correct the Court's computation of her sentence under the sentencing

7    guidelines.  (CV-13-5100 Doc. 1 at 8-10 and Doc. 10 at 20-26.)  Specifically, Defendant

8    argues that the Court erred in calculating her total offense level by adding levels based on

9    the amount of loss, Defendant's leadership role in the offense, and the number of victims.

10   (CV-13-510 Doc. 1 at 8-10; CV-13-510 Doc. 10 at 16-20.)  In ground five of the 2010

11   case, she argues that counsel was ineffective for failing to object to the Court's restitution

12   order.  (CV-13-510 Doc. 1 at 11; CV-13-510 Doc. 10 at 27-29.)  The plea agreement in

13   the 2010 case stipulated that Defendant's sentence would not exceed 120 months'

14   imprisonment and that it could run consecutive to her sentence in the 2011 case.  (CV-13-

15   510 Doc. 2, Ex. C at 3-4.)  The plea agreement also stated that the Court would order

16   restitution under 18 U.S.C. § 3663.  (*Id.* at 2.)  In accordance with the plea agreement, the

17   Court sentenced Defendant to 120 months' imprisonment in the 2010 case.  (CV-13-510

18   Doc. 2, Ex. H at 73.)  The Court also ordered Defendant to pay restitution.  (*Id.* at 74.)

19       A defendant's rights to challenge any sentencing errors may be explicitly waived.

20   *See United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991).   When a waiver

21   specifically includes the waiver of the right to appeal a sentence or to challenge a

22   sentence on § 2255 review, then it also waives "the right to argue ineffective assistance of

23   counsel at sentencing."  *See Nunez*, 223 F.3d at 959.  Here, Defendant's plea agreement

24   explicitly provided that she waived "any and all motions, defenses, probable cause

25   determinations, and objections which the defendant could assert to . . . the imposition of

26   sentence upon the defendant, provided the sentence is consistent with this agreement."

27   (CV-13-510 Doc. 2, Ex. C at 5.)  She further waived "any right to appeal the imposition

28

1    of sentence upon defendant . . . and to collaterally attack [her] conviction and sentence"

2    in a § 2255 proceeding.  (*Id*.)

3         Because Defendant effectively waived her right to collaterally attack her sentence,

4    she waived her claims of ineffective assistance of counsel at sentencing.  *See United*

5    *States v. Fernandez-Mendoza*, 2013 WL 4431029, at *7-8 (D. Ariz. Aug. 16, 2013)

6    (finding that movant's knowing and intelligent waiver of his right to seek review in a

7    § 2255 motion precluded him from challenging his sentence in a § 2255 motion); *United*

8    *States v. Gomez-Cazares*, 2013 WL 394208, at *3 (D. Ariz. Jan. 31, 2013) (finding that

9    movant waived challenges to his sentences, including a restitution order, pursuant to

10   waiver of right to bring a § 2255 motion in his plea agreement).  Accordingly, she is not

11   entitled to relief on her claims of ineffective assistance of counsel asserted in grounds

12   four and five.

13        **F.    Validity of Waiver Provision in Plea Agreement — Raised on Reply in**
14            **2010 Case**

15        In her Reply, Defendant argues for the first time that the waiver of her right to

16   collaterally attack her conviction and sentence, as provided in her plea agreement in the

17   2010 case, is invalid because her sentence in that case was not consistent with the terms

18   of the plea agreement.  Specifically, Defendant argues that the Court's calculation of her

19   sentencing guidelines range was based on an amount of loss that exceeded the amount

20   stipulated in the plea agreement.  (CV-13-510 Doc. 17 at 2-6.)  Because Defendant raised

21   this argument for the first time in her reply, and without any explanation for its omission

22   from her motion, the Court need not consider it.[9]  *See Zamani v. Carnes*, 491 F.3d 990,

23   _____

24        [9]  Defendant's argument on reply that the Court's guidelines calculations were not
     consistent with the terms of the plea agreement is based on the same characterization of
25   the Court's guidelines calculations that she asserted to support her earlier argument of
     ineffective assistance of counsel (ground four in the 2010 case).  Thus, Defendant was
26   aware of the facts she relied upon for both arguments at the time she filed her motion.
     Also, as previously noted, her motion anticipated that the government would argue that
27   she had waived her right to collaterally attack her conviction and sentence. Despite her
     knowledge of the facts she asserts to support this argument and her expectation that the
28   government would argue waiver, she waited until her reply, when the government would
     not have an opportunity to respond, to argue that the waiver was invalid because her
     sentence did not comply with the plea agreement.

1    997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first

2    time in a reply brief.") (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)).

3    Nonetheless, even if the Court considers Defendant's argument, it fails because

4    her sentence was consistent with the terms of the plea agreement.  The plea agreement

5    stipulated that Defendant could be sentenced to a term of up to 120 months'

6    imprisonment in the 2010 case (CV-13-510 Doc. 2, Ex. C at 3), and the Court sentenced

7    Defendant to 120 months' imprisonment. The plea agreement included various

8    stipulations for the guidelines calculation that would apply to Defendant, but as the Court

9    noted at sentencing, "the real force of this plea agreement is the cap on sentencing at 120

10   months."  (CV-13-510 Doc. 2, Ex. H at 34.)  This conclusion is supported by several

11   issues arising from the stipulations in the plea agreement regarding the guidelines

12   calculations, which were identified in the presentence report and at addressed at

13   sentencing.  As set forth below, the Court resolved these issues, with the parties'

14   agreement, to honor the intent of the plea agreement that Defendant not be sentenced to

15   more than 120 months' imprisonment in the 2010 case.

16   First, the plea agreement provided that "the parties have no agreement on whether

17   the sentence imposed in CR 10-00796-2-PHX-NVW will run consecutive or concurrent

18   to the sentence imposed in CR 11-00491-PHX-ROS."  (CV-13-510 Doc. 2, Ex. C at 3.)

19   Thus, under the plea agreement, the Court could impose concurrent or consecutive

20   sentences in the 2010 and 2011 cases.  However, as defense counsel stated at sentencing,

21   "guideline 3C1.3, which albeit an advisory guideline, refers back to a statute that requires

22   the [sentence imposed for] offenses committed while on release must be consecutive."[10]

23   (CV-13-510 Doc. 2, Ex. H at 6.)  To resolve this issue, defense counsel stated:

24           [W]e are in also in agreement that the annotation to the
             guideline clearly gives Your Honor the discretion to come up
25           with a reasonable sentence that covers both cause numbers
             and to divvy up the sentence in such a fashion that you still
26

27           [10]  "Under 18 U.S.C. § 3147, a sentence of imprisonment must be imposed in
             addition to the sentence for the underlying offense, and the sentence of imprisonment
28   under 18 U.S.C. § 3147 must run consecutively to any other sentence."  U.S.S.G.
     § 3C1.13, comment. (n.1).

arrive at the number you find reasonable albeit you make the sentence consecutive to conform to the statute.

[Defense counsel] have discussed this with [Defendant.] She understands that. *So the cap remains the same. Even though the language of the plea agreement may be erroneous, the intent of the parties remains the same given the annotations to the guideline.*

(*Id.*) (emphasis added.)

In response, the Court stated that "notwithstanding what is stated in the plea agreement it appears the statute requires consecutive sentenc[es]. So you are telling me that everyone understands that, and that does not in anyone's mind jeopardize either of these plea agreements." (*Id.* at 7.) All counsel agreed with the Court's statement. (*Id.*) Therefore, even though the parties agreed that the Court was required to impose consecutive sentences in the two cases, rather than having the discretion to impose concurrent sentences as stipulated in the plea agreement, the parties agreed that the Court could impose consecutive sentences and still comply with the intent of the plea agreement, which was a sentence not to exceed 120 months' imprisonment in the 2010 case.

Second, the plea agreement included a stipulation that Defendant would receive a three-point reduction in her offense level based on acceptance of responsibility. (CV-13-510 Doc. 2, Ex. C at 4.) However, as stated in the presentence report (CR-1-796 PSR at ¶ 23), and discussed at length at sentencing (CV-13-510 Doc. 2, Ex. H at 11-18), Defendant did not qualify for a reduction in her offense level based on acceptance of responsibility because she was arrested on new federal criminal charges in the 2011 case while on pretrial release in the 2010 case. *See* U.S.S.G. § 3E1.1, comment. (n.1 (B)). The Court stated "that leaves me with the question of the acceptance of responsibility downward adjustment and three levels that the parties agreed to thinking it applied, not knowing that it does not apply." (*Id.* at 67.)

To resolve this issue, the Court invited the government "to authorize [the Court] to give her a three-level variance initiated by the government to the same effect" and the

government agreed to do so.  (*Id.*)  Therefore, the Court granted Defendant "a three-level variance . . . initiated by the government and in lieu of the unavailable acceptance of responsibility which the parties, in good faith, thought was available and agreed to and which the defendant relied upon. So I'm protecting her reliance entirely." (CV-13-510 Doc. 2, Ex. H at 67.)  Thus, the Court again resolved an issue in the plea agreement to honor the intent of the agreement — a sentence of no more than 120 months' imprisonment — even though it could not accept the parties' stipulation regarding acceptance of responsibility.

Third, the intent of the plea agreement — a sentence of no more than 120 months' imprisonment — is further demonstrated by the parties' arguments and the Court's statements regarding sentencing.  The government calculated Defendant's guidelines range as 78 to 86 months, but urged the Court to "depart upward" and "find a variance and vary up to 120 months." (*Id.* at 62.)  Defense counsel repeatedly urged the Court to accept the plea agreement and impose a sentence below 120 months' imprisonment.  (*Id.* at 49, 51, 52, 54, 57.)  The Court stated that "there's a bright line issue in this plea agreement as to whether this cap at 10 years is too low for the offenses in light of all the statutory purposes of sentencing." (*Id.* at 46.)  The Court further stated that the "issue here is with this magnitude, length, and duration of time, the number of fraudulent loans done, the amount of loss, and then just the breadth of dishonest conduct and the involvement of the defendant, whether 10 years is a sufficient punishment to serve the statutory purposes of sentencing." (*Id*. at 47.)  Thus, the parties and the Court acknowledged that the Court would comply with the plea agreement by imposing a sentence of no more than 120 months' imprisonment.

In addition, Defendant's argument fails because it is not supported by the record. She asserts that the Court did not follow the parties' stipulation in the plea agreement that "the total loss amount for the defendant's offense is between $2,500,000 and $7,000,000 for purposes of the Sentencing Guidelines." (CV-13-510 Doc. 2, Ex. C at 3.)  She asserts, without citation to the sentencing transcript, that the Court "apparently

disregarded" this stipulation and based her sentence on an amount of loss between $20,000,000 and $50,000,000.  (CV-13-510 Doc. 17 at 3.)   The record, however, establishes that the Court accepted the parties' stipulation regarding the amount of loss.

First, although recommending that the Court reject the plea agreement, the presentence report correctly summarized the terms of the plea agreement.  (CR-10-796 PSR at ¶ 4.)  Second, at the start of the sentencing hearing, the Court also correctly summarized the terms of the plea agreement.  (CV-13-510 Doc. 2, Ex. H. at 5 ("the parties stipulate that the loss amount for this offense is between 2 and a half and $7 million for purposes of the sentencing guidelines.").  Third, the Court focused on the issue of the loss amount and addressed this issue at length with the parties.  (*Id.* at 25-35, 49.)  Fourth, the Court explicitly accepted the parties' stipulation regarding the loss amount.  (*Id.* at 66 ("I will accept the — that part of the plea agreement that caps the damages at 7 million . . . .  So I'm going to accept that $7 million cap.")

Therefore, the sum of Defendant's argument is that the Court committed a mathematical error in calculating the sentencing guidelines range.  Even if Defendant is correct, the Court did not reject or violate any terms of the plea agreement at sentencing.  Indeed, the Court complied with the terms of the plea agreement by sentencing Defendant within the stipulated cap of 120 months' imprisonment.[11]  To the extent the Court made mathematical errors in calculating the guidelines range, such errors would be considered sentencing errors that do not invalidate the waiver provision of the plea agreement.  *See Bolinger*, 940 F.2d at 480. Therefore, the Court rejects Defendant's argument on reply that the Court violated the terms of her plea agreement.

### G.    Ineffective Assistance of Counsel — Ground Three in the 2011 Case

In ground three in the 2011 case, Defendant argues that counsel was ineffective for failing to request an evidentiary hearing to determine the value of real property sought to

---

[11]  Although the Court concluded that the applicable advisory guidelines range was 121 to 151 months (CV-13-510 Doc. 2, Ex. H. at 49.), the Court applied an additional unspecified downward variance to impose a sentence of 120 months' imprisonment, "the maximum under the plea agreement." (*Id.* at 73.)

1    be discharged in the bankruptcy proceeding and to establish the amount of intended loss.

2    (CV-13-511 Doc. 1 at 5, Doc. 9 at 29.)  She argues that, in accepting the calculation in

3    the presentence report of the amount of intended loss as between $1.0 million to $2.5

4    million, the Court added a sixteen level enhancement to her sentence.  (CV-13-511

5    Doc. 16 at 11.)  She argues that counsel's failure to object to the Court's computation was

6    ineffective assistance of counsel.  (*Id.*, CV-13-511 Doc. 9 at 29-30.)

7          The plea agreement in the 2011 case stipulated that Defendant's sentence would

8    not exceed 60 months imprisonment, and that it could run consecutive to her sentence in

9    the 2010 case.  (CV-13-510 Doc. 2, Ex. D at 4.)  In accordance with the plea agreement,

10    the Court sentenced Defendant to 60 months' imprisonment in the 2011 case.  (CV-510

11    Doc. 2, Ex. H at 79.) As set forth above in Section II(E), a defendant's rights to challenge

12    any sentencing errors may be explicitly waived.  *See Bolinger*, 940 F.2d at 480. When a

13    waiver specifically includes the waiver of the right to appeal a sentence or to challenge a

14    sentence on § 2255 review, then it also waives "the right to argue ineffective assistance of

15    counsel at sentencing." *See Nunez*, 223 F.3d at 959.

16          Here, Defendant's plea agreement in the 2011 case, as with the 2010 case,

17    explicitly provided that she waived "any and all motions, defenses, probable cause

18    determinations, and objections which the defendant could assert to . . . the imposition of

19    sentence upon the defendant, provided the sentence is consistent with this agreement."

20    (CV-13-510 Doc. 2, Ex. D at 5-6.)  She further waived "any right to appeal the

21    imposition of sentence upon defendant . . . and to collaterally attack [her] conviction and

22    sentence" in a § 2255 proceeding.  (*Id.*)  Because Defendant's sentence was consistent

23    with the plea agreement, she effectively waived her right to collaterally attack her

24    sentence, and thus to assert ineffective assistance of counsel at sentencing.  *See*

25    *Fernandez-Mendoza*, 2013 WL 4431029, at *7-8; *Gomez-Cazares*, 2013 WL 394208, at

26    *3.  Accordingly, she is not entitled to relief on her claims asserted in ground three in the

27    2011 case.

28

### H.   Cumulative Error — Ground Six in the 2010 Case, Ground Four in the 2011 Case

Finally, in both cases, Defendant asserts that she is entitled to relief due to the cumulative effect of counsel's errors.[12]   (CV-13-510 Doc. 1 at 12; CV-13-511 Doc. 1 at 6.)  Plaintiff, however, has not established that counsel was ineffective with respect to the entry of her guilty plea, and she waived her right to assert claims of ineffective assistance of counsel that fall outside the category of claims challenging the validity of the plea or waiver, therefore, her claims of cumulative error fail.

### III.   Conclusion

As set forth above, the record in both cases establishes that Defendant knowingly and voluntarily entered guilty pleas pursuant to written plea agreements that included waivers of her right to collaterally attack her convictions and sentences.   The § 2255 motions should be denied because Defendant's claims regarding the voluntariness of her guilty pleas lack merit and because she waived her rights to raise her other claims in a § 2255 motion.

Accordingly,

**IT IS RECOMMENDED** that in both cases the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV-13-510 Doc. 1; CV-13-511 Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.  The parties shall have fourteen

---

[12]   Defendant's claim of ineffective assistance of counsel based on cumulative error is identified as ground seven in the supporting memorandum that Defendant filed in both § 2255 proceedings.  (CV-13-510 Doc. 10 at 30; CV-13-511 Doc 9 at 30.)

days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 6th day of February, 2014.

Bridget S. Bade
United States Magistrate Judge